# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ROGER DALE CHILDRESS, II,** * | |
| Plaintiff * | |
| v. * | CIVIL NO. JKB-16-2884 |
| **GOODLOE MARINE, INC.,** *et al.*, * | |
| Defendants. * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Roger Dale Childress, II, brought this diversity action against Defendants Goodloe Marine, Inc., and its employee Benton Goodloe Jr. ("Boomer"), asserting two counts of negligence in regard to an incident when Plaintiff was harmed by pipes that fell off his flatbed tractor trailer. Defendants have moved for summary judgment on both counts (ECF No. 75), and that motion is fully briefed and ripe, (ECF Nos. 78, 80). No hearing is necessary to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). Because Plaintiff was contributorily negligent, and because there is no genuine issue of material fact about that, summary judgment will be granted for Defendants on both counts. Defendants are entitled to judgment as a matter of law.

**I.** *Background*

Plaintiff was a truck driver and on Friday, September 5, 2014, he picked up a load of 16" diameter plastic pipe in South Carolina. (Childress Dep. 232:20-233:8, 238:21, Opp'n Ex. A, ECF No. 78-3.) The load consisted of ten bundles of pipe, with three pipes in each bundle. (*Id.* 239:3-240:1.) Each bundle was banded together with "metal bands and . . . wood slats." (Benton Goodloe, Jr. Dep. No. 2 at 15:6-7 ("Boomer Dep."), Mot. Summ. J. Ex. 10, ECF No. 75-

11.) They were loaded on Plaintiff's flatbed trailer in the following manner: Two bundles were placed side-by-side to form a row. Each row was separated by a thin piece of wood. After two rows were laid down, Plaintiff secured them with straps. Then, after each additional row, Plaintiff would secure that row with straps, for a total of five rows secured by four sets of straps. (Childress Dep. at 243, 245:4-252:2; Boomer Dep. at 32:1-4.)

When Plaintiff picked up the load, he signed a document discussing safety issues related to loading and unloading this type of pipe (the "Safety Document"). (Childress Dep. at 263-64; Safety Document, Opp'n Ex. B, ECF No. 78-4.) The Safety Document stated "**WARNING PIPE FALLING OFF THE TRUCK CAN KILL OR INJURE.**" (Emphasis in original). It admonished the driver to "[r]ead and observe these UNLOADING GUIDELINES." It warned, "**NEVER GO TO THE OPPOSITE SIDE OF THE TRAILER WHEN UNLOADING EQUIPMENT IS MOVING NEAR THE TRUCK**. Moving equipment could knock the load down on top of you. To avoid your own death or injury, **tell the operator to stop moving and wait while you work on the other side of the load.**" (Second emphasis added). It further warned, "**IF A PERSON CANNOT BE SEEN, IMMEDIATELY STOP UNLOADING AND FIND THAT PERSON**." (Emphasis in original).[1]

Plaintiff delivered the load to Defendant Goodloe Marine in Ocean City, Maryland, on the morning of September 8, 2014. (Childress Dep. at 294:11-298:21.) Boomer, one of Goodloe Marine's employees, was operating a John Deere Model 524K-II Loader with fork attachments—essentially a large fork lift. (*Id.* at 295-96.) While Boomer unloaded the pipes, the loader was on the passenger's side of the trailer. (*Id.* at 305:21-306:1.)

---

[1] According to Defendants, each individual pipe was also labeled with a warning that stated "DO NOT STAND NEAR LOAD." (Mot. Summ. J. Mem. Supp. 3, ECF No. 75-1.) But Defendants did not provide the Court with much evidence of this, only citing to the deposition of Donne Grant, a former employee of Georg Fischer Central Plastics, in which she said there *was* a warning. (Donnie Grant Dep. 30, Mot. Summ. J. Ex. 6, ECF No. 75-7.)

2

The unloading process was as follows: Plaintiff removed the straps for the top layer by loosening them on the driver's side, then walking to the passenger's side and unhooking the straps, and finally by throwing the straps over to the driver's side. (Childress Dep. at 301.) Plaintiff then stood 25 feet away from the end of the trailer, "where [he] could see [Boomer] and the loader." (*Id.* 302:5-20.) Boomer then removed the top two bundles of pipe, *i.e.*, the top row, starting with the passenger's side bundle. (*Id.* 302:1-2.) They repeated this process for the top three layers, and unloaded the first six bundles of pipe without incident. Plaintiff then loosened the final straps (holding down the last two rows of pipes).

What happened next is in dispute. According to Plaintiff, he threw two of the three straps covering the final two rows over from the passenger's side to the driver's side, but when he threw the third strap, it did not clear the load and instead landed on top of the pipes. (Childress Dep. 308:3-7.) Plaintiff then walked around the back of the trailer to the driver's side—the side opposite from the loader—to remove the strap that was on top of the load. (*Id.*) Plaintiff provides no evidence, and does not argue, that he told Boomer or anyone else at the unloading site before walking to the other side of the trailer. As he was standing next to the unsecured pipes on the driver's side of the trailer, he heard Boomer blow his horn and the pipes fell on him. (*Id.* 308:7-8, 316:1-22.)

According to Defendants, Boomer blew his horn as he was approaching the trailer (according to Defendants, he had been blowing his horn each time he approached the trailer in order to warn Plaintiff (and others)). (*See* Mot. Summ. J. Mem. Supp. 13, ECF No. 75-1.) He then lifted the two unstrapped bundles on the passenger's side of trailer, reversed the loader, and began to turn. (*See* Boomer Dep. at 98.) As he did so, he saw the two remaining bundles slide off the driver's side of the trailer. (*Id.*) He then set the load down, turned off the loader, and

3

went to investigate, thinking the pipe may have been damaged in the fall. (*Id.*) As he approached the trailer, he realized pipes had fallen on the Plaintiff. (*Id.*)

It is undisputed Plaintiff was injured by the pipes that fell on him. He brought this action against Goodloe Marine and Boomer seeking compensation for those injuries. Specifically he brought two claims of negligence: one count against Goodloe Marine for its own negligence as well as its liability for Boomer's negligence under a theory of *respondeat superior*, and one count against Boomer individually. Before the Court is Defendants' motion for summary judgment.

Before considering the substance of that motion, however, the Court would be remiss in failing to explain to the parties, particularly Defendants, what constitutes an "undisputed fact." Undisputed facts are pieces of information, drawn from the evidence developed so far in the case, that are not disputed, *i.e.*, that neither party contends is untrue. According to Defendants' "Undisputed Statement of Facts," the following are pieces of information both parties agree are true: it was a "cloudy, windy, and misty morning," when Plaintiff dropped off the pipes at Goodloe Marine; "[a]t no time did Plaintiff give any of the paperwork he received from Georg Fischer/Independent Pipe to Boomer"; Plaintiff was "rolling up his straps" when he was injured. (Mot. Summ. J. Mem. Supp. at 1-15.) This is only a sample of various purported facts, characterized by Defendants as "undisputed," that are *clearly* and *explicitly* disputed by Plaintiff. (*See* Childress Dep. 300:6-11 ("Q: [. . . .] What was the . . . weather like when you arrived . . . ? A: Beautiful weather. Clear, sunny."); *id.* 303:5 ("A: I gave him the unloading instructions."); *id.* at 308:5-7 ("I went around, back around the trailer to pull the strap, the hook off the top of the load."). Incredibly, according to Defendants it is *undisputed* that "Mr. Childress was

contributorily negligent." (Mot. Summ. J. Mem. Supp. at 3.) Counsel should be aware: an averment that a fact is "undisputed" is a representation to the Court.[2]

## II. *Standard and applicable law*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy is over $75,000. "In diversity actions, a district court applies the substantive law and choice of law rules of the state in which the court sits." *Chartis Prop. Cas. Co. v. Huguely*, 243 F. Supp. 3d 615, 622 (D. Md. 2017). This Court sits in Maryland and Plaintiff was harmed in Maryland, and therefore the Court will apply the substantive tort law of Maryland in analyzing Plaintiff's claims. *See id*; *Hauch v. Connor*, 453

---

[2] Plaintiff engaged in similar, if less significant, misinterpretation of the record. For example, according to Plaintiff it is "undisputed" that Plaintiff "checked to make sure . . . that the straps were tight" before he left for Ocean City, and that when he arrived he "handed the man [*i.e.*, Boomer] the unloading instructions." (Opp'n 3, ECF No. 78-1.) Both of these facts are disputed. The Court will also note that it reaffirms its decision to deny Plaintiff leave to file a surreply. (Mem. and Order, ECF No. 82.) Plaintiff argued in his motion for leave to file a surreply that Defendants presented many facts as "undisputed" when they were actually in dispute. While true, that is not a legitimate reason to file a surreply. The Court is well aware of the standard on summary judgment, what constitutes a disputed fact, and how to read a record to determine if a fact is disputed.

A.2d 1207, 1209 (Md. 1983) (noting that under Maryland law, "the substantive tort law of the state where the wrong occurs governs").

## III. *Analysis*

Defendants make several arguments as to why summary judgment should be granted in their favor. According to Defendants, the undisputed facts show they were not negligent. They argue Plaintiff assumed the risk, and even despoiled evidence (although they do not squarely raise a spoliation argument in their opening brief). Like much of Defendants' briefing, these arguments are ultimately irrelevant. That is because Defendants also contend Plaintiff was contributorily negligent, the Court agrees as a matter of law on the instant record, and, "[i]n Maryland, contributory negligence is a complete bar to recovery." *Leakas v. Columbia Country Club*, 831 F. Supp. 1231, 1235 (D. Md. 1993) (citing *Hooper v. Mougin*, 284 A.2d 236, 238 (Md. 1971)).

"Contributory negligence is the failure to observe ordinary care for one's own safety. 'It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances.'" *Kasten Const. Co. v. Evans*, 273 A.2d 90, 92 (Md. 1971) (quoting *Potts v. Armour & Co.*, 39 A.2d 552, 556 (Md. 1944)). Whether a plaintiff was contributorily negligent is often a question for the jury. *See Menish v. Polinger Co.*, 356 A.2d 233, 241 (Md. 1976); *Campbell v. Baltimore Gas and Elec. Co.*, 619 A.2d 213, 216 (Md. Ct. Spec. App. 1993). "The trial court may, however, take the issue of contributory negligence from the jury . . . when the undisputed facts of the case support such a finding as a matter of law." *Campbell*, 619 A.2d at 216.

Contributory negligence and primary negligence are not two "sides of the same coin." *See AT&T Mobility LLC v. Tiptons' Inc.*, Civ. No. JKB-16-3107, 2017 WL 4222624, at *7 (D.

Md. Sept. 21, 2017) (quoting *Menish*, 356 A.2d at 235-36). The defense of contributory negligence is not a question of whether the plaintiff breached a duty to the defendant. *See id*. Rather, it is a question of whether the plaintiff failed "to take proper precautions for [his] own safety." *Menish*, 356 A.2d at 236 (internal quotation marks omitted).

If a plaintiff knowingly comes into contact or close proximity with a thing he knows is dangerous, and is thereby harmed, "it will be assumed as a matter of law that his own negligence contributed to the accident." *Lipscombe v. Potomac Edison Co.*, 495 A.2d 838, 842 (Md. 1985) (quoting *Potomac Edison Co. v. State*, 177 A. 163, 166 (Md. 1935)). For example, in *Lipscombe*, a truck driver dumped materials at a site where he knew there were low hanging electrical wires. 495 A.2d at 839. In the process of unloading, the driver raised his (metal) trailer bed and woke up in the hospital. *Id.* at 840. After the trial court found that he was contributorily negligent, he argued on appeal he did not know about prior accidents similar to his own, and he was unable to see the wires at the time because of the sun. *Id.* at 840-41. The Maryland Court of Appeals, however, found these facts immaterial. *See id.* at 841-42. What mattered was the truck driver knew of a dangerous thing, and did not exercise reasonable care in regard to that thing. The court explained, quoting *Potomac Edison Co. v. State*, 177 A. at 166, "where such a person voluntarily comes in contact with, or approaches nearer than a reasonably prudent person would, a wire or other thing which he knew, or, as a person of ordinary knowledge and experience, has reason to believe, is sufficiently charged with electricity to be dangerous, and in consequence of such contact or proximity is shocked and injured, it will be assumed as a matter of law that his own negligence contributed to the accident." *Id.* at 842.

As *Lipscombe* suggests, and other cases show, a plaintiff's independent duty to take precautions for his own safety is not diminished by factors beyond his control, such as another

7

person's actions. *See Campbell*, 619 A.2d at 218. In *Campbell*, another electric wire case, the plaintiff was doing some roofing work and was assured by his supervisor that the area was free of electrical wiring. *Id.* at 215-18. The plaintiff and a coworker extended a ladder near a fence on the property, without noticing a 7,600 volt electrical distribution line above them. *Id.* at 215. When the ladder came into contact with the wire, the plaintiff was severely injured. *Id.* The Maryland Court of Special Appeals held that even if the plaintiff's supervisor assured him the site was safe, his own negligence still contributed to his misfortune. Although a person "may rely on assurances of safety . . . where an ordinarily prudent person would do so," the court explained that "such assurances do not relieve a person from the duty of caring for his own safety, and a person cannot rely on another's assurances where he is aware of the danger involved or where the danger is obvious enough that an ordinarily prudent person would not so rely." *Id.* at 218 (quoting *Erdman v. Johnson Bros.*, 271 A.2d 744, 751 (Md. 1970)).

Before turning to the application of contributory negligence in the case at bar, there are two additional aspects of the doctrine worth highlighting. First, a court may properly consider whether the plaintiff had "reasonable alternative[s]" safer than the course of action he took. *Craig v. Greenbelt Consumer Servs., Inc.*, 222 A.2d 836, 837 (Md. 1966). In *Craig*, a plaintiff slipped on some sawdust at a grocery store. *Id.* She "testified that she saw the sawdust in the aisle and that she knew it to be slippery, yet she, without hesitating to plan her course, intentionally walked into the sawdust when she had a reasonable alternative of walking on the section of the aisle which was clear." *Id.* The Maryland Court of Appeals affirmed the trial court's finding that she was contributorily negligent. *Id.* at 838. Second, when considering whether a plaintiff was contributorily negligent, the Court may consider, as it would in an assessment of primary negligence, industry standards, warning signs and so forth; but the Court

8

is not required to turn a blind eye to common sense. *See Reid v. Washington Overhead Door, Inc.*, 122 F. Supp. 2d 590, 594 (D. Md. 2000). "The Maryland courts have not hesitated to find a plaintiff contributorily negligent as a matter of law where common experience reveals the foreseeable dangers of the plaintiff's actions." *Id.* (citing cases).

With these principles in mind, the Court finds Plaintiff was contributorily negligent as a matter of law. At the outset, it is important to highlight what does *not* bear on the issue of Plaintiff's contributory negligence. Whether or not Boomer or any other employee of Goodloe Marine was negligent is irrelevant. Nor does it matter whether Boomer primarily caused the pipes to fall on Plaintiff, nor whether Plaintiff caused Boomer to act in a certain way that caused the pipes to fall. The issue of Plaintiff's contributory negligence instead presents questions about Plaintiff's regard for his *own* safety: did he do, or not do, some thing (or things) that a reasonably prudent person would, or would not have done; and did these actions place him in danger and result in him being harmed? The answer to both questions is yes.

Plaintiff unstrapped four bundles of piping and then, without telling anyone, walked to the opposite side of the trailer from the loader and stood directly next to the unsecured pipes. Perhaps Boomer should have immediately ceased unloading. Perhaps another Goodloe Marine employee should have waved for Boomer to stop. Perhaps Boomer and Goodloe Marine breached no duty and Plaintiff himself somehow caused the pipes to fall. None of this is of any moment because, considering Plaintiff's own testimony and the safety documentation he was provided, Plaintiff voluntarily came into contact or close proximity with a thing he knew was dangerous and was thereby harmed. *See Lipscombe*, 495 A.2d at 842. Thus, "it will be assumed as a matter of law that his own negligence contributed to the accident." *Id.* (quoting *Potomac Edison Co. v. State*, 177 A. at 166).

9

Put differently, Plaintiff was made aware of the danger attendant to unloading these pipes, and his independent duty to take precautions in the face of that danger was not diminished by Boomer's actions. Before delivering the load of pipes, Plaintiff signed (and, therefore, presumably read) a document that stated "**WARNING PIPE FALLING OFF THE TRUCK CAN KILL OR INJURE**," and "**NEVER GO TO THE OPPOSITE SIDE OF THE TRAILER WHEN UNLOADING EQUIPMENT IS MOVING NEAR THE TRUCK**." (Emphasis in original). According to his own testimony and argument, he then unstrapped bundles of pipe, walked to the opposite side of the trailer from the loader, and stood next to two unsecured bundles of pipe during the unloading process. It is undisputed he did not approach Boomer and explain why he was going to the other side of the trailer, or ask Boomer to stop unloading, even though the Safety Document admonished the Plaintiff to "tell the operator to stop moving and wait while you work on the other side of the load." According to Plaintiff's own testimony and argument, he did not do this because he assumed Boomer would not be foolish enough to continue unloading when Plaintiff was out of eyesight. But the actions of another, even their assurances of safety in a given situation "do not relieve a person from the duty of caring for his own safety, and a person cannot rely on another's assurances when he is aware of the danger involved." *Campbell*, 619 A.2d at 218 (quoting *Erdman*, 271 A.2d at 751). In ignoring explicit warnings and apparent danger in favor of the assumption that Boomer would act with due care, Plaintiff failed to exercise reasonable caution, and was harmed as a result.

Finally, the availability of reasonable alternative courses of action and some common sense reinforce the Court's conclusion that Plaintiff was contributorily negligent. The parties exert too much energy disputing *why* Plaintiff went to the driver's side of the trailer. According to Defendants, he was an overworked employee of a careless trucking company, trying to rush a

job by wrapping up his straps before all the pipes were unloaded. Plaintiff tells a different story, in which he was simply doing his job and helping the process along by removing a stuck strap. But the parties' significant focus on *why* ignores the more legally weighty discussion of *how*. Regardless of why Plaintiff went to the driver's side of the trailer after unstrapping the final load, Plaintiff had at least one reasonable alternative course of action: he could have told Boomer what he was doing before trying to remove (or roll up) the strap. Not only could he have done this, it appears he was instructed to do this. (*See* Safety Document (warning Plaintiff to "tell the operator to stop moving and wait while you work on the other side of the load").)

Moreover, the Court need not rely entirely on the Safety Document; common sense suggests that *some* communication with Boomer (or somebody) would have been prudent. Although not everyone has driven a tractor-trailer with a load of thirty 16" diameter pipes, it is not altogether uncommon to use straps to secure items—perhaps a mattress, or a canoe—to a car or trailer. Even under those relatively low-stakes conditions, if, while unloading, you notice a strap is caught in some manner you would likely say something, or at least wave to the other person (or persons) helping you unload the mattress or canoe—so that the other person wouldn't take some unexpected action that would cause the load to shift or fall on you. This is just common sense. Plaintiff was dealing with a load much heavier, more dangerous, and more unstable than such ordinary items, and he does not present evidence that he signaled to anyone at Goodloe Marine before walking to the opposite side of the trailer to "pull the strap . . . off the top of the load." (Childress Dep. 308:6-7.) Plaintiff even suggests that the location of the strap may have prevented Boomer from unloading the pipe. (*See* Opp'n at 20 ("It should go without saying that a strapped load cannot be unloaded while still strapped.").) If that were the case (and it is not entirely clear Plaintiff asks the Court to make such an inference), it only bolsters the Court's

finding that common sense dictates Plaintiff should have said something to Boomer. Whatever Boomer's mistakes (if any), an ordinary prudent person in Plaintiff's situation would not have bet his safety on the assumption that a person he previously had never met would exercise proper caution. Rather, such a person would have signaled in some manner that the strap was stuck (if it was). Plaintiff did not do so, and for this and the other reasons explained above he was contributorily negligent as a matter of law.

**IV.** *Conclusion*

The undisputed facts show that Plaintiff was contributorily negligent, and therefore, by accompanying order, summary judgment will be granted for Defendants on both Counts and the Clerk will be directed to close the case.

DATED this 9th day of August, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge